# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| JOSEPHINE PLOTKIN, | * |
| | *   No. 16-1249V |
| Petitioner, | *   Special Master Christian J. Moran |
| | * |
| v. | *   Filed: May 29, 2020 |
| | *   Reissued: September 1, 2022 |
| SECRETARY OF HEALTH | * |
| AND HUMAN SERVICES, | *    attorneys' fees and costs, |
| | *    deceased petitioner without estate |
| Respondent. | * |
| * * * * * * * * * * * * * * * * * * * | * |

Anne C. Toale, Maglio, Christopher & Toale, Sarasota, FL, for deceased petitioner;
Darryl R. Wishard, U.S. Dep't of Justice, Washington, DC, for respondent.

**ORDER REGARDING MOTION FOR ATTORNEYS' FEES AND COSTS**[1]

     A motion for attorneys' fees and costs has been pending for nearly two years as various issues were resolved. The motion has recently become ripe. Because the petitioner has died and because no one has substituted for her, an award of attorneys' fees and costs cannot be made at this time.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website (http://www.cofc.uscourts.gov/aggregator/sources/7). This posting will make the order available to anyone with the internet. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Background and Procedural History

Represented by an attorney from the Maglio, Christopher & Toale law firm, Josephine Plotkin filed a petition on September 30, 2016. Ms. Plotkin alleged an influenza vaccination caused her to suffer Guillain-Barré syndrome. This aspect, the primary aspect of the case, resolved relatively smoothly with a decision adopting the parties' stipulation issuing on November 27, 2017. 2017 WL 7795124.

Ms. Plotkin submitted a motion to redact the decision. No form of evidence, such as an affidavit, corroborated the factual assertions in the motion for redaction. The motion for redaction stated that Ms. Plotkin and her estranged husband declared bankruptcy. Pet'r's Mot. for Redaction, filed Dec. 11, 2017, ¶ 3. In a status conference held on January 9, 2018, Ms. Plotkin's attorney seemed to realize for the first time that a bankruptcy filing might implicate Ms. Plotkin's ability to receive compensation through the Vaccine Program. See order issued Jan. 16, 2018; Pet'r's Status Rep., filed Feb. 20, 2018, ¶ 3. Ms. Plotkin withdrew her motion to redact. Id. ¶ 1.

Attorneys at Maglio, Christopher & Toale attempted to figure out how to proceed in light of the bankruptcy. This process took more than one year. Eventually, on May 29, 2019, an attorney from a law firm in New Jersey sent a letter to notify the parties in Ms. Plotkin's bankruptcy about an intent to reopen the case. Exhibit 32. This attorney stated that he was acting for Ms. Plotkin through a power of attorney Ms. Plotkin had granted to her daughter, Audrey Maher. Id.; see also exhibit 34 (Ms. Plotkin's durable power of attorney). The bankruptcy court granted the motion to reopen and determined that the settlement proceeds from the Vaccine Program were exempt. Exhibit 32 at 26-27 (June 17, 2019 order). This action allowed the attorney at Maglio, Christopher & Toale who was representing Ms. Plotkin (Anne Toale) to release the funds, which Ms. Toale had been holding pending a ruling from the bankruptcy court.

Ms. Plotkin died on July 4, 2019. Exhibit 26. Her death, by itself, did not implicate an immediate obligation to file a motion to substitute pursuant to Rule 25(a)(1) of the Rules of the Court of Federal Claims because this rule allows time "to serve the relevant papers on an estate representative before the deadline for substitution is triggered." Christner v. Sec'y of Health & Human Servs., 145 Fed.

2

Cl. 633, 635 (2019). Based upon information Ms. Maher provided, Ms. Toale communicated that an estate for Ms. Plotkin has not been created.

Before Ms. Plotkin died, she filed a motion for attorneys' fees and costs on June 1, 2018. CM-ECF 51. While the proceedings in bankruptcy first delayed and then complicated resolving the motion for attorneys' fees and costs, the parties have responded to several orders for their positions and legal authority. In a recent submission, Ms. Toale has requested that the check for attorneys' fees and costs be made out to her.

Ms. Toale cannot be awarded attorneys' fees and costs directly. As explained below, awards for attorneys' fees and costs must be made to a party and presently there is no party to whom an award can be made.

## Statutory Scheme

Section 15 of the Vaccine Act addresses "compensation." Within section 15, paragraph (a) authorizes compensation to a petitioner for unreimbursed medical expenses, lost earnings, death, and pain and suffering. See Heinzelman v. Sec'y of Health & Human Servs., 681 F.3d 1374, 1379 (Fed. Cir. 2012). Other paragraphs within section 15 limit potential damages. For example, § 15(d)(1) prohibits punitive or exemplary damages. Section 15(d)(2) restricts, with some exceptions, compensation to benefit the person who suffered the vaccine-related injury. Sections 15(g) and 15(h) make the Vaccine Program a secondary payer, except to Medicaid. Section 15(i) specifies the source of funds, the Vaccine Injury Compensation Trust Fund.

Ms. Toale's motion for an award of attorneys' fees and costs rests upon section 15(e). This paragraph provides "In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover- (A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition." 42 U.S.C. § 300aa–15(e).

Whether an attorney in the Vaccine Program may directly receive attorneys' fees and costs (i.e., has standing to pursue attorneys' fees and costs independent of a client) is a question of law. See Shealey v. Wilkie, 946 F.3d 1294, 1297 (Fed. Cir. 2020).

## Analysis

3

The issue is whether attorneys' fees belong to the attorney such that attorneys may pursue them without a client or without a client's consent. While the Federal Circuit has not addressed this question in the Vaccine Program, the Federal Circuit has considered the issue in the context of cases interpreting other statutes: the Civil Service Reform Act, the Whistleblower Protection Act, and the Equal Access to Justice Act.[2]

*Civil Service Reform Act.* On at least three occasions, the Federal Circuit has interpreted the attorneys' fees and costs provision for federal employment actions, 5 U.S.C § 7701(g)(1). In the first case, a government employee, Ms. McBeen, settled her claim against her employing agency and released the agency from any claim made by Ms. McBeen's former attorney, Allen L. McAlear. Mr. McAlear sought attorneys' fees from the Merit Systems Protection Board (MSPB), which denied them. On appeal, the Federal Circuit stated that the Civil Service Reform authorizes an award of attorneys' fees "to a prevailing party." Because Ms. McBeen "has plainly and explicitly withdrawn any request to the Board for attorney fees, . . . there was no cognizable request for such fees before the MSPB." McAlear v. Merit Systems Protection Bd., 806 F.2d 1016, 1017 (Fed. Cir. 1986). The Federal Circuit reasoned, "Petitioner McAlear, even though he is McBeen's former lawyer-representative, cannot, on his own and contrary to the expressed wishes and agreement of the prevailing party, call upon the MSPB to decide the reasonableness of his fee request or to impose a lien on the settlement funds awarded to McBeen." Id.

Roughly two years after McAlear, the Federal Circuit was again called upon to interpret 5 USC § 7701(g) in Jensen v. Dep't of Transportation, 858 F.2d 721 (Fed. Cir. 1988), although the Federal Circuit did not cite McAlear in Jensen. Ms. Jensen retained attorney Charles Padorr to challenge her removal from government service. In the retainer, Ms. Jensen "agreed to pay [Mr.] Padorr 40 percent of the amount of any backpay award, or the amount of any attorney fee award, whichever was greater." Id. at 722. Ms. Jensen received a backpay award of $20,771.20, and 40 percent of that amount is $8,308.48. Mr. Padorr agreed to accept $5,846.24 and to release Ms. Jensen from her obligation to pay the balance of $2,462.24 in exchange for Ms. Jensen's authorization for his right to pursue and to receive any attorney fee award from the Board. Id. at 722-23. The Board found that a

---

[2] Ms. Toale has cited decisions from special masters. See Pet'r's Status Rep. regarding Estate, filed Mar. 3, 2020, at 2-4. However, those decisions are not binding. Boatmon v. Sec'y of Health & Human Servs., 941 F.3d 1351, 1358 (Fed. Cir. 2019).

4

reasonable attorneys' fees award was $16,423.53, but withheld payment of $5,846.24 because Mr. Padoor had refused to reimburse Ms. Jensen that amount. Mr. Padoor sought relief from the Federal Circuit to collect the remaining $5,846.24.  Id. at 723.

The Federal Circuit ruled in favor of Mr. Padoor.  The Federal Circuit stated "the board must make the attorney fee award payable to the attorney." Id. at 724. The Federal Circuit followed an earlier decision from the MSPB, Blessin v. Dep't of the Navy, 26 M.S.P.R. 615 (1985), and cases interpreting 42 U.S.C. § 1988.

The effect of Jensen, however, appears limited.  In the next Federal Circuit case interpreting the Civil Service Reform Act, Willis v. Gov't Accountability Office, 448 F.3d 1341 (Fed. Cir. 2006),[3] the Federal Circuit noted that Jensen did not discuss Evans v. Jeff D., 475 U.S. 717 (1986), in which the Supreme Court held that a party has the right to request fees under 42 U.S.C. § 1988.  The Federal Circuit otherwise explained that Jensen correctly distinguished the right of an attorney to collect awarded fees from the right of an attorney to seek fees in the first instance.  448 F.3d at 1347.  Thus, Jensen did not help resolve Willis.

In Willis, the former government employee, Sandra P. Davis, first retained Janice F. Willis to represent her.  Ms. Davis then discharged Ms. Willis and retained Nora V. Kelley.  Ms. Davis received compensation.  Ms. Davis filed a motion for attorneys' fees and costs, requesting fees for Ms. Kelly's work and a portion of the fees Ms. Willis billed.  Id. at 1342-43.  Ms. Willis intervened, among other reasons, to seek fees that Ms. Davis had declined to advance.  The MSPB did not award all the fees Ms. Davis had requested for fees and concluded that Ms. Willis could not seek fees without Ms. Davis's consent because an attorney did not have this "independent right."  Id. at 1343.  Ms. Willis then appealed to the Federal Circuit.

The Federal Circuit defined the issue as whether Ms. Willis "has standing to appeal the Board's decision to this court."  While Ms. Willis asserted two theories– first, that she has a separate statutory right to seek fees and second, that she has the right to claim fees that Ms. Davis had requested but the Board had declined, the Federal Circuit rejected both.  With respect to the first theory of standing, the Federal Circuit held that section 7701(g) does not grant "attorneys a legally

---

[3] The GAO Board may award attorneys' fees and costs available pursuant to 5 U.S.C. § 7701(g) through 31 U.S.C. § 753(e)(1).

5

protected interest independently to assert a claim for a fee award." Id. at 1345. With respect to the second theory, the Federal Circuit ruled that Ms. Willis lacked prudential standing. Thus, the Federal Circuit dismissed the appeal for lack of standing. Id. at 1349.

*Whistleblower Protection Act*.  In one case, the Federal Circuit commented on whether the Whistleblower Protection Act allows an attorney to obtain fees directly.

In this case, after Elisa Rumsey prevailed in front of the MSPB on her claim that the government had retaliated against her, she sought attorneys' fees. The Board declined to award attorneys' fees for work performed by one of Ms. Rumsey's attorneys, Beth Slavet. Rumsey v. Dep't of Justice, 866 F.3d 1375, 1376 (Fed. Cir. 2017).

By the time of the fee request, the relationship between Ms. Rumsey and Ms. Slavet had become strained regarding the amount of fees. Although Ms. Slavet had intervened before the Board to defend her requested amount of fees, Ms. Rumsey stated that "'[T]here may be some truth to this claim that Ms. Slavet's time charges should not be fully compensable.'" Id. at 1378. The administrative judge and then the full Board denied the request for Ms. Slavet's fee because Ms. Rumsey did not support the request. In opposition to the request for fees, the government also argued that because Ms. Slavet had become a federal employee, conflict of interest statutes prevented an award of attorneys' fees to Ms. Slavet. Id.

The thrust of the Federal Circuit's opinion was to reverse the finding that Ms. Slavet was not entitled to any attorneys' fees. The Federal Circuit directed the Board to fashion a reasonable award because an admission that *some* hours may not be reasonable is not the same as admitting that *all* hours are not reasonable. Id. at 1381.

For purposes of Ms. Plotkin's case, the Federal Circuit's statements regarding the conflict-of-interest statutes are more relevant. The Federal Circuit held that Ms. Slavet's employment with the federal government was not relevant. Attorneys' fees are "properly the property of Ms. Rumsey, as the employee, not [Ms.] Slavet, the attorney." Id. at 1382.

*Equal Access to Justice Act*.  In at least two cases, the Federal Circuit has considered payments to attorneys directly under the Equal Access to Justice Act. There is also one case from the United States Supreme Court addressing the Act.

6

In the first case, FDL Technologies, Inc. prevailed in an action before the Armed Services Board of Contract Appeals, which awarded FDL Technologies fees for the work its attorney, Dale C. Nathan, performed.  FDL Technologies filed for bankruptcy.  After FDL Technologies did not receive payment, it sued the United States in the Claims Court requesting, among other things, that the attorneys' fees "be paid directly to Nathan."  FDL Technologies, Inc. v. United States, 967 F.2d 1578, 1579 (Fed. Cir. 1992).  The United States, then, sent a check to the trustee in bankruptcy for FDL Technologies.  With this payment, the Claims Court dismissed the action.

On appeal, the Federal Circuit stated that the issue is "whether an attorney is entitled to direct payment of fees awarded to a prevailing party in an agency adjudication pursuant to the EAJA, 5 U.S.C. § 504(a)(1)."  Id. at 1580.  Relying upon the statute's language that authorizes "fees and other expenses" "to a prevailing party" and relying upon Phillips v. General Services Admin., 924 F.2d 1577 (Fed. Cir. 1991), the Federal Circuit ruled that "the prevailing party, and not counsel, is entitled to attorney fees awarded under 5 U.S.C. § 504(a)(1)."  FDL Technologies, 967 F.2d at 1581.  Thus, the award of attorneys' fees to the bankrupt (prevailing) party would make those fees part of the estate, subject to claims of various creditors.

Whether funds awarded for attorneys' fees are available to entities other than the attorney who generated the fees underlies the Supreme Court's analysis in Astrue v. Ratliff, 560 U.S. 586 (2010).  There, the Supreme Court evaluated the Equal Access to Justice Act and statutes (31 U.S.C § 3711(a), 3716(a)) that authorize the United States government to offset debts administratively.  In this case, Ruby Willow Kills Ree prevailed on a claim for Social Security benefits.  Ms. Kills Ree requested attorneys' fees for her attorney, Catherine Ratliff, and was awarded $2,112.60 in attorneys' fees.  However, before the United States paid the attorneys' fees, the United States learned that Ms. Kills Ree owed a debt to the government.  Thus, the United States sought to use the award of attorneys' fees to satisfy part of Ms. Kills Ree's debt.  Id. at 589.

In a unanimous opinion, the Supreme Court stated that the "the term 'prevailing party' in subsection (d)(1)(A) carries its usual and settled meaning— prevailing litigant."  Id. at 591.  The Supreme Court reached this conclusion by a close textual analysis.  In doing so, the Supreme Court distinguished the general language in the Equal Access to Justice Act from language in the Social Security

7

Act that explicitly authorizes payments to attorneys directly. Id. at 595, citing 42 U.S.C. § 406(b)(1)(A).[4]

Ratliff, in turn, was relied on by the Federal Circuit in its final relevant case. In introducing the background to this case, the Federal Circuit stated that it "involves a recurring problem—a claim for statutory attorney's fees by counsel where the client declines to authorize the request for fees." Shealey v. Wilkie, 946 F.3d 1294, 1295 (Fed. Cir. 2020). In particular, Matthew Shealey retained attorneys from the Veterans Legal Advocacy Group, Meghan Gentile and Harold Hoffman, to represent him in his attempt to gain benefits. However, after Ms. Gentile and Mr. Hoffman recommended that Mr. Shealey dismiss his case, Mr. Shealey discharged them, obtained new counsel, and eventually became the prevailing party on his claim. Id.

Ms. Gentile and Mr. Hoffman filed an "EAJA application in Mr. Shealey's name," requesting $4,061.60 for fees incurred representing Mr. Shealey. Mr. Shealey opposed the request. The Court of Appeals for Veterans Claims allowed the attorneys to intervene but dismissed the application due to a lack of standing. The attorneys then appealed. Id. at 1297.

Based largely upon Ratliffe and Willis, the Federal Circuit affirmed the dismissal for lack of standing. The Federal Circuit seemed to suggest that the attorneys might bring an action in state court against their former client for his breach of the retainer agreement. Id. at 1299-1300.

In summary, these cases illustrate that in disparate circumstances, the Federal Circuit has ruled that the award of attorneys' fees belongs to the client, not to the attorney. In some cases, the client opposed the attorney's application. See McAlear (the client waived the attorney's fees in a settlement agreement), Willis (the client objected in part to the amount of attorney's fees), and Shealey (the client objected entirely). In other cases, payment to the client would interfere or frustrate

---

[4] This statute states, "Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(i) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C. § 406(b)(1)(A).

the attorney's ability to receive the money paid.  See FDL Technologies (client in bankruptcy), Ratliff (client in debt to the United States).  The only exception (Jensen) seems to have been tightly limited to its unique factual circumstances.

Against these cases, Ms. Toale's strongest argument relies upon the statutory language, attempting to distinguish the Vaccine Act from the statutes the Federal Circuit interpreted.  See Pet'r's Status Rep. regarding Estate, filed Mar. 13, 2020, at 3-4.  In Ms. Toale's view, because section 15(e) does not say "to a prevailing party," the lack of specificity allows an award to be paid directly to her.

Although Ms. Toale's argument has some validity, it ultimately fails to persuade.  First, paragraph (e) rests within the larger section (42 U.S.C. § 300aa–15) on compensation.  Another part of section 15, paragraph (i) provides, "Payment of compensation under the Program to a petitioner for a vaccine-related injury or death associated with the administration of a vaccine on or after October 1, 1988, shall be made from the Vaccine Injury Compensation Trust Fund established under section 9510 of title 2642." 42 U.S.C. § 300aa–15(i)(2).  Paragraph (i) sheds light on the meaning of paragraph (e) because statutes are interpreted as a whole.  Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1318 (Fed. Cir. 2013).  The key portion of paragraph (i) is: "Payment of compensation . . . *to a petitioner* . . . shall be made from the . . . Trust Fund."  The Vaccine Act does not specify a source of funding for payments to anyone other than the petitioner.  If Ms. Toale's argument were accepted, then the source of funding a payment of attorneys' fees and costs not "to a petitioner" is not readily apparent.[5]

Second, "similar language in the various fee-shifting statutes should be interpreted alike absent some indication to the contrary."  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  The rationale behind the fee-shifting provisions of the Civil Service Reform Act, the Whistleblower Act, the Equal Access to Justice Act, and the Vaccine Act seem similar in that Congress wanted to encourage attorneys to represent claimants.  This policy goal, however, did not lead the Federal Circuit to direct payments to attorneys McAlear, Willis, Slavet, Nathan, Gentile, or Hoffman.  Attorneys McAlear, Willis, Slavet, Nathan, Gentile, and Hoffman, to greater and lesser degrees, helped their clients.  Thus, whether they "deserved" payment was not an issue.  The issue for them and for

---

[5] Acting through the Health Resources and Services Administration, the Secretary reports payments of attorneys' fees and costs.  See https://www.hrsa.gov/vaccine-compensation/data/index.html.

9

Ms. Toale is whether Congress has authorized a payment to the attorneys without involvement of a client.

Third, when Congress has wanted to authorize agencies to pay attorneys directly, Congress has included specific language. Congress did so for claimants seeking Social Security benefits, see footnote 4 above, and for veterans.[6] The lack of comparable language in the Vaccine Act suggests that Congress intended to follow the general practice in that attorneys' fees belong to the client, not to the attorney. As a further comparison, the "prevailing party" language does not appear in the Vaccine Act because the petitioner does not need to prevail (i.e., be awarded damages) for attorneys' fees and costs to be available. The Vaccine Act only requires that petitioners have good faith and a reasonable basis to pass the threshold requirement for attorneys' fees and costs. 42 U.S.C. § 300aa—15(e)(1).

Ms. Toale's predicament is that she no longer has a client. Her client, Josephine Plotkin, died. There is no estate. As such, there is no one to receive an award.[7] In such a situation, a court cannot award attorneys' fees and costs. See Cornell v. Wilkie, 32 Vet. App. 69 (2019) (revoking award of attorneys' fees and costs after claimant died and no successor was found); In re Marriage of Kirby, 280 So. 3d 98 (Fla. Dist. Ct. App. 2019) (revoking award of attorneys' fees against a litigant who ceased to be present because she died and no estate had been created).

Under the circumstances present for Ms. Toale, the undersigned cannot now award attorneys' fees and costs.[8] Ms. Toale is given a choice. She may file a status report within 30 days, confirming that Ms. Maher has agreed to create an estate for Ms. Plotkin and setting forth a schedule when such estate will be

---

[6] See 38 U.S.C. § 5904(d)(3) (stating "the Secretary may direct that payment of any fee to an agent or attorney under a fee arrangement described in paragraph (1) be made out of such past-due benefits"), cited in Ravin v. Wilkie, __ F.3d __, 2020 WL 1909110 (Fed. Cir. 2020).

[7] A separate question is assuming that Ms. Plotkin authorized a request for attorneys' fees before she died, whether that authorization survives Ms. Plotkin's death.

[8] The undersigned, therefore, is not determining whether the fees Ms. Plotkin incurred in reopening her bankruptcy case could be reimbursed. Similarly, the undersigned is not determining whether any fees incurred to create an estate for Ms. Plotkin can be reimbursed. The undersigned also provides no guidance as how any assets in Ms. Plotkin's estate would be distributed among creditors, such as Ms. Toale.

established.⁹  Alternatively, and if Ms. Toale does not file a status report in 30 days, the undersigned will issue this order as a decision, denying Ms. Toale's motion for attorneys' fees and costs.  Ms. Toale, then, might file a motion for review of the decision.¹⁰  If an appellate authority holds that the undersigned may grant payment to Ms. Toale directly, then the undersigned will determine a reasonable amount of attorneys' fees and costs.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master

---

⁹ It appears that probate courts in New Hampshire are operating during the coronavirus pandemic.  See https://www.courts.state.nh.us/index.htm.

¹⁰ As for whether Ms. Toale possesses standing to file a motion for review, Ms. Toale may wish to review Brannigan v. Sec'y of Health & Human Servs., No. 14-675V, 2016 WL 7338616 (Fed. Cl. Nov. 23, 2016).