# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| JOSEPHINE PLOTKIN, | * |
| | *     No. 16-1249V |
|              Petitioner, | *     Special Master Christian J. Moran |
| v. | * |
| | * |
| SECRETARY OF HEALTH | *     Filed: October 3, 2016 |
| AND HUMAN SERVICES, | * |
| | * |
|              Respondent. | * |

* * * * * * * * * * * * * * * * * * * * * * * *

## ORDER REGARDING ATTORNEYS' FEES AND COSTS

Vaccine Rule 13 and Section X of the Guidelines address aspects of applications for attorneys' fees and costs. The parties should be familiar with those provisions.

The attorney representing the petitioner(s) should be aware that now, the Secretary does not routinely agree not to object to particular requests for attorneys' fees. Thus, contrary to Guidelines, Section X, Chapter 4, the Secretary is unlikely to consent to the filing of a stipulation regarding attorneys' fees.

The Secretary's lack of participation complicates the process of awarding attorneys' fees and costs in at least two respects. First, without stipulations, the queue of cases awaiting adjudication of attorneys' fees and costs is lengthening. Although the undersigned is aware of an attorney's interest in receiving an award of attorneys' fees and costs promptly, many attorneys are seeking awards in other cases, too. In addition, the merits of a petitioner's claim that a vaccine harmed him or her are pending in numerous cases.

Second, without participation from the Secretary, the undersigned must review every application for attorneys' fees and costs. The undersigned believes that Federal Circuit precedent defines the process for awarding attorneys' fees even when the Secretary has not identified any deviations from the approved process.

In the undersigned's experience, the most signature point of departure from Federal Circuit precedent comes in the context of an attorneys' hourly rate. To minimize disputes over reasonable hourly rates, the following guidance is provided:

**<u>Reasonable Hourly Rates</u>**

The process for determining a reasonable hourly rate for an attorney in the Vaccine Program contains three steps, set forth in <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1348-50 (Fed. Cir. 2008).

First, the special master is obligated to find a reasonable hourly rate in the locale where the attorney practices (say, St. Louis, Missouri). A reasonable local hourly rate is based upon the rates charged by similar attorneys performing similar work. <u>Blum v. Stenson</u>, 465 U.S. 886, n.11 (1984). The legal work in the Vaccine Program is not particularly complex. <u>Masias v. Sec'y of Health & Human Servs.</u>, 634 F.3d 1283, 1288-90 (Fed. Cir. 2011). The petitioner should submit some evidence supporting a proposed hourly rate. For a list of ways to establish a reasonable local hourly rate, <u>see</u> Guidelines, Section X, Chapter 3.B.1.c.

Second, the special master is obligated to find a reasonable hourly rate for the forum, which is Washington, D.C. The need to consider the forum rate is part of the structure established by binding precedent. <u>Avera</u>, 515 F.3d at 1348.

In 2015, a law firm, which represents numerous petitioners in the Vaccine Program, submitted evidence regarding the forum rate. The extensive litigation led to a lengthy decision finding reasonable forum rates for attorneys with different levels of experience. <u>McCulloch v. Sec'y of Health & Human Servs.</u>, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). As a decision of another special master, <u>McCulloch</u> does not bind the undersigned and different evidence could produce a different result. However, the undersigned has adopted the <u>McCulloch</u> findings. <u>Avchen v. Sec'y of Health & Human Servs.</u>, No. 14-279V, 2015 WL 9595415, at *3 (Fed. Cl. Spec. Mstr. Dec. 4, 2015).

Third, the special master compares the local rate (say, the St. Louis, Missouri rate) to the forum rate (presumptively set forth in <u>McCulloch</u>). The comparison could produce three results:

1. If the local rate is higher than the forum rate, then the special master awards the forum rate. See <u>Rodgriguez v. Sec'y of Health & Human Servs.</u>, No. 06-559V, 2009 WL 2568468, at *16-19 (Fed. Cl. Spec. Mstr. July 27, 2009) (discussing high cost exception to forum rate), <u>mot. for rev. denied</u>, 91 Fed. Cl. 453 (2010), <u>aff'd</u> 632 F.3d 1381 (Fed. Cir. 2011). In this situation, the forum rate caps the attorney's hourly rate.

2. If the local rate is significantly different from (significantly lower than) the forum rate, then the special master awards the local rate. <u>See Masias</u>, 634 F.3d at 1287. In this situation, the structure avoids producing a windfall to the petitioner's attorney.

3. If the local rate is not "significantly different from" the forum rate, then the special master awards the forum rate. In this situation, the forum rate serves to make hourly rates relatively uniform.

For information about what constitutes a significant difference between the local rate and forum rate, see Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356-57 (Fed. Cir. 2011).

Petitioner's attorney should recognize that the Federal Circuit either requires or has endorsed much of this process.  Petitioner's attorney is advised to submit applications that conform to this structure.  For example, if an attorney requests an hourly rate that exceeds the hourly rate found in McCulloch, the undersigned will require persuasive evidence and arguments to justify that result.

**Reasonable Number of Hours**

After finding a reasonable hourly rate, the special master finds a reasonable number of hours.  Avera, 515 F.3d at 1347-48; see also Guidelines, Section X, Chapter 2.b & Chapter 3.B.1.b.  The foundation for this finding is the set of timesheets that the attorneys and other professionals prepare.  The professionals are expected to record their time contemporaneously and billing in intervals of one-tenth of an hour (0.1 hours) is preferred.

In submitting an application based on the timesheets, the petitioner's attorney is expected to exercise "billing judgment."  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  In some cases, an appropriate "billing judgment" is to charge for all the work listed on the invoice.  In other cases, an appropriate "billing judgment" is to reduce or to eliminate time charged for a particular task.  In this situation, the petitioner's attorneys may usefully demonstrate that they have exercised their billing judgment by showing how they have eliminated time that is excessive, unreasonable, or redundant.[1]  For example, scenario 4, below, may lead to a lower amount of time than expected, and should be explained.

To assist the petitioner's attorney in presenting the fee application, the undersigned provides a list of issues in which the reasonableness of the activity raises some questions.  These items are concerns; they are not bright-line tests.

1.  Multiple attorneys working on a case.  A partner or senior attorney, who charges a high rate, may work with an associate, who charges a lower rate.  However, participation of more than two attorneys tends to be reasonable only if the additional attorneys bring expertise that the other attorneys do not have.
2.  Attorneys charging attorney rates for performing paralegal tasks.  An attorney's high hourly rate reflects, in part, the attorney's education and training.  Tasks that do not require this background, such as collecting medical records, should be charged at a lower rate.
3.  Paralegals charging paralegal rates for performing clerical tasks.  An attorney's hourly rate is designed to produce income to pay for general overhead expenses, such as a secretary / clerical support.  As such, the law firm should not charge separately for clerical work.

---

[1] In contrast, a general statement from the petitioner's attorney to the effect that "I used my judgment" without any showing as to how the attorney adjusted the invoice is not likely to be persuasive.

3

4. Copying and pasting from one document to another.  An attorney may charge a reasonable amount of time to prepare an original document (for example, 5 hours to set forth the facts in the petition).  If the attorney copies that material into another document (for example, the factual portion of a pre-trial brief), the attorney may not charge the 5 hours again.  This principle also forbids duplicate charging across cases.  For example, if an attorney spends 3 hours writing a reply brief on attorneys' fees in the Abbott case, the attorney may not charge 3 hours for filing a substantially identical brief in the Baker case.
5. Block billing.  Each discrete task should have a specific entry.  A rule of thumb is that tasks that require more than one hour should be further refined.  For example, "review of medical records – 5.0 hours" provides less information than "review of exhibit 1 – 0.5 hours, review of exhibit 2 – 2.0 hours, review of exhibit 3 (hospital records 2.5 hours)."
6. Vague entries.  The entries on the time sheet should stand alone.  A rule of thumb is that entries should contain more than 10 words.  For example, "review respondent's expert report to prepare for tomorrow's status conference" provides more information than "review file."  Even privileged communications should contain more detail than simply saying "Telephone call with client."  See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011)

It would be helpful for the petitioner's attorney to summarize the requested hourly rate and the requested number of hours for each person in a chart.  Here is an example:

| Name | Year Work Performed | Hourly Rate | Number of Hours | Subtotal |
|---|---|---|---|---|
| Partner | 2015 | $400 | 10 | $4,000 |
| Partner | 2016 | $405 | 2 | $810 |
| Associate | 2015 | $300 | 50 | $15,000 |
| Paralegal | 2015 | $100 | 20 | $2,000 |
| TOTAL | | | | $21,810 |

Applications that comply with these instructions are likely to be readily understood and may receive expedited consideration due to their ease of adjudication.  In contrast, applications that do not comply with these instructions may be difficult to understand and may require a more time-intensive review.  If the petitioner's attorney has questions about the process for attorneys' fees, the petitioner should request a status conference.  The undersigned will assist in making this process as efficient as possible.

Any questions regarding this order may be directed to my law clerk, Shannon Proctor, at (202) 357-6360.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master