# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Estate of JOSEPHINE PLOTKIN,  \*
ANNE C. TOALE, ESQ., as Executor,\*
            \* No. 16-1249V
     Petitioner, \* Special Master Christian J. Moran
            \*
v.            \*
            \* Filed:  October 6, 2022
SECRETARY OF HEALTH   \*
AND HUMAN SERVICES,   \* Attorneys' fees and costs;
            \* Bankruptcy; Probate
     Respondent. \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Anne C. Toale</u>, Maglio, Christopher & Toale, Sarasota, FL, for Petitioner;
<u>Alexis Babcock</u>, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

  Attorney Anne Toale currently represents Anne Toale, the executor of the estate of Josephine Plotkin.  Formerly, Attorney Toale represented Ms. Plotkin in a claim in the Vaccine Program.  Ms. Toale seeks an award of attorneys' fees and costs, incurred in three different fora: the Office of Special Masters, the Bankruptcy Court in New Jersey, and a probate court in New Hampshire.  For the reasons that follow, Ms. Toale is awarded **$59,335.08**.

---

  [1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website (http://www.cofc.uscourts.gov/aggregator/sources/7).  This posting will make the order available to anyone with the internet.  Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4).  Any redactions ordered by the special master will appear in the document posted on the website.

## Background and Procedural History

1. Events in Ms. Plotkin's health in 2014

Before receiving the allegedly causal vaccinations, Ms. Plotkin was suffering from, among other illnesses, Alzheimer's dementia. See Exhibit 2 at 4. At the age of 77 years, Ms. Plotkin was given a dose of the influenza vaccine on September 12, 2014. Exhibit 1 at 1.

Ms. Plotkin developed problems walking and sought assistance from an emergency room. She was hospitalized and diagnosed as suffering from a peripheral neurological problem, Guillain-Barré syndrome. Exhibit 2 at 147-48. Following her hospitalization, Ms. Plotkin was discharged to a rehabilitation facility. After nearly one month, Ms. Plotkin was further discharged from the rehabilitation facility to home on December 30, 2014. Exhibit 12 at 13.

2. Bankruptcy Petition

Represented by an attorney, Ms. Plotkin sought a discharge of her debts by filing a petition in the bankruptcy court for the district of New Jersey with a petition filed on December 31, 2014. Ms. Plotkin's daughter, Audrey Maher, acted for Ms. Plotkin via a durable power of attorney that Ms. Plotkin had granted to Ms. Maher. Exhibits 28 & 34.

In the bankruptcy petition, Ms. Plotkin did not list a potential claim for compensation in the Vaccine Program among her assets. Exhibit 28 (letter from attorney who represented Ms. Plotkin in bankruptcy). The bankruptcy proceeding closed in June 2015. Exhibit 27 at 4.

3. Proceedings in the Vaccine Program

On July 20, 2015, a doctor informed Ms. Plotkin that the flu vaccination might have caused her GBS. Exhibit 2 at 47. Ms. Toale asserts that this statement was the first time that Ms. Plotkin learned about a potential causal connection between the flu vaccine and her illness. Pet'r's Resp., filed Dec. 31, 2019, at 3. The Secretary has neither questioned nor refuted when Ms. Plotkin first learned about a potential claim.

Maglio, Christopher & Toale, P.C., the law firm where Attorney Toale is a partner, was first contacted on March 18, 2016.  Exhibit 18 (timesheets).  Ms. Toale submitted a petition on September 30, 2016.  About 14 months later, the parties resolved the case.  Entitlement Decision, 2017 WL 7795124 (Fed. Cl. Spec. Mstr. Nov. 27, 2017).  For work during the entitlement portion of the case, Attorney Toale was compensated through an Interim Fees Decision.  Fees Decision, 2021 WL 4287351 (Fed. Cl. Spec. Mstr. Aug. 25, 2021).

The entitlement portion did not end the case as questions about attorneys' fees and costs continued.  These questions concerned proceedings in the bankruptcy court in New Jersey and a probate court in New Hampshire.

### 4.  Reopening Bankruptcy Proceeding

In a status conference held on January 9, 2018, Attorney Toale seemed to realize for the first time that Ms. Plotkin's bankruptcy filing might implicate her ability to receive compensation through the Vaccine Program.  See Order, issued Jan. 16, 2018; Pet'r's Status Rep., filed Feb. 20, 2018, ¶ 3.

Initially, the managing partner at Maglio, Christopher & Toale determined that an attorney in that firm, F. John Caldwell, should explore how to reopen the bankruptcy.  Mr. Caldwell was selected because, at least in part, he was admitted to practice in New Jersey.  Mr. Caldwell attempted to move the case forward for approximately one year.

Mr. Caldwell and Maglio, Christopher & Toale separated.  Attorney Toale resumed her representation of Ms. Plotkin.  Ms. Toale retained a new attorney to reopen Ms. Plotkin's bankruptcy, Richard Tronk.  Exhibit 29.  The bankruptcy court eventually reopened the estate and determined that the proceeds from the Vaccine Program were exempt from creditors.  Exhibit 32 at 26-27 (Order, In re Jerome Plotkin & Josephine Plotkin, No. 14-36056-MBK (Bankr. D.N.J., June 17, 2019)).

This action by the bankruptcy judge allowed Attorney Toale to release the funds, which Ms. Toale had been holding pending a ruling from the bankruptcy court.  Apparently, Ms. Toale moved relatively swiftly as although Ms. Plotkin died on July 4, 2019 (Exhibit 26), Ms. Plotkin's receipt of settlement proceeds has never been questioned.

3

### 5. Probate Proceedings in New Hampshire

After Ms. Plotkin's death, Attorney Toale submitted an amended motion for attorneys' fees and costs on August 1, 2019. In that motion, Ms. Toale requested that the check for attorneys' fees and costs be made payable directly to her. Pet'r's Mot. for Payment of Atty's' Fees & Reimbursement of Case Costs, filed Aug. 1, 2019, at 2. Proceedings on that motion have been lengthy.

On the specific question of whether a special master could order payment to Attorney Toale alone, the Secretary "oppose[d] Ms. Toale's request for an order awarding attorneys' fees and costs made payable exclusively to her." Resp't's Status Rep., filed Apr. 10, 2020, ¶ 1. The Secretary further asserted "an estate would be needed for Ms. Plotkin in order to facilitate payment of attorneys' fees." Id. at ¶ 2. Finally, the Secretary opposed "paying for attorneys' fees and costs for the creation of [an] estate because the deceased petitioner died of reasons unrelated to the Vaccine Act case." Id. at ¶ 4.

After receiving briefs from both parties, the undersigned held that attorneys' fees are payable to a client and because Attorney Toale did not have a client, she could not be awarded attorneys' fees. Order, Plotkin v. Sec'y of Health & Hum. Servs., 2020 WL 13543884, at *6-7 (Fed. Cl. Spec. Mstr. May 29, 2020). This analysis was based upon a review of one opinion from the United States Supreme Court and six opinions from the United States Court of Appeals for the Federal Circuit.[2] This order allowed Attorney Toale a choice: (1) the order could be reissued as a formal decision denying attorneys' fees and costs from which Attorney Toale arguably might appeal or (2) an estate could be created.

Attorney Toale opted to pursue the creation of an estate. Ms. Toale retained a law firm in New Hampshire. With the assistance of this law firm, a probate court appointed Ms. Toale executor of Ms. Plotkin's estate on December 21, 2020. Exhibit 38. In her capacity of executor of Ms. Plotkin's estate, Ms. Toale became the petitioner in the present action. Order, issued May 26, 2021. Attorney Toale

---

[2] Although Ms. Toale correctly notes that those cases originated under other statutes— Pet'r's Mot. for Payment of Atty's' Fees & Reimbursement of Case Costs, at 6, filed Apr. 7, 2022; see also Pet'r's Memo. of Law in Supp. of Mot. for Payment of Pet'r's Attys' Fees & Reimbursement of Case Costs, filed Apr. 7, 2022—Ms. Toale did not explain why the language or the policy underlying the Vaccine Act differs.

remains counsel of record. The client of Attorney Toale is Ms. Toale, executor of Ms. Plotkin's estate.

For the work regarding Ms. Plotkin's estate, the New Hampshire law firm charged approximately $4,000, which includes approximately $100 for a bond. Attorney Toale and her staff have charged approximately $26,000 for work in probate proceedings.

### 6. Pending Motions for Attorneys' Fees and Costs

Ms. Toale requested an award of attorneys' fees and costs for work performed after the Interim Fees Decision, that is, work that includes efforts to reopen the bankruptcy proceeding and to create an estate. Pet'r's Mot., filed Apr. 7, 2022.[3] Ms. Toale requested $66,735.08, consisting of $59,483.70 in attorneys' fees and $7,251.38 in costs. Id. at 7.

The Secretary's response was mostly generic. Resp't's Resp., filed Apr. 18, 2022. For attorneys' fees and costs associated with the bankruptcy proceeding, the Secretary referenced his previous objection. Id. at 1 (citing Resp't's Mem., filed Jan. 20, 2020). For attorneys' fees and costs associated with the probate proceeding, the Secretary acknowledged that "the only reason probate was established is to enable the payment of attorneys' fees and costs for the Vaccine Act claim." Id. at 4. "In these unusual circumstances, respondent defers to the special master as to whether fees and costs are appropriate." Id.

Ms. Toale did not file a reply, leaving the motion ready for adjudication.

## Analysis

As a matter of right, a petitioner who receives compensation is entitled to reasonable attorneys' fees and costs "incurred in any proceeding on such petition." 42 U.S.C. § 300aa–15(e)(1). Here, Ms. Toale's predecessor, Ms. Plotkin, received compensation. Thus, the critical questions concern whether Attorney Toale can receive any compensation from the Vaccine Injury Compensation Trust Fund for work performed in association with the bankruptcy reopening and the estate

---

[3] Ms. Toale's April 7, 2022 Motion helpfully consolidates several motions for fees filed earlier.

creation. Because Ms. Toale is entitled to some compensation, the ensuing and less critical questions concern whether the amounts requested are reasonable.

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required.

   1. Bankruptcy Reopening

Ms. Toale supported the request for compensation for the bankruptcy reopening with a letter from Attorney Trenk. He stated: "the case was reopened for the sole purpose of ensuring that full disclosure of the Vaccine Act claim was made and the exemptions were asserted in accordance with Title 11." Exhibit 29 at 3; see also Pet'r's Resp., filed Dec. 31, 2019, at 6 (quoting Exhibit 29); Pet'r's Br., filed Apr. 7, 2022, at 12 (quoting Exhibit 29). Ms. Toale also notes that the bankruptcy court granted the motion to reopen and, later, closed the case.

The Secretary's argument against awarding any compensation for the bankruptcy proceeding is found in his January 20, 2020 objection. There, the Secretary argued that tasks are compensable in the Vaccine Program "if the action for which they were performed was 'an essential prerequisite condition' to obtaining an award that must 'be fulfilled in order for [the] award to be made.'" Resp't's Memo., filed Jan. 20, 2020, at 2, (quoting Bennett v. Sec'y of Health & Hum. Servs., No. 15-65V, 2017 WL 3816094, at *3 (Fed. Cl. Spec. Mstr. Aug. 7, 2017)).

For the sake of discussion, the Secretary's articulation of the standard can be assumed accurate. But, accepting this formulation does little to advance the Secretary's implicit argument that reopening the bankruptcy was not an essential prerequisite. The Secretary's argument is more implied than overt in that the Secretary has opposed the request for attorneys' fees for the bankruptcy proceeding and offered his understanding of the standard.

6

However, what is missing from the Secretary's position is any assessment of the facts and circumstances of Ms. Plotkin's case.  See Resp't's Memo., filed Jan. 20, 2020.  The Secretary fails to recount even in the most minimal way why the bankruptcy case was reopened.  The Secretary does not address at all Attorney Trenk's statement on which Ms. Toale relied.  Notably, Ms. Toale put forward Attorney's Trenk's explanation regarding why the bankruptcy was required to be reopened at least twice: in petitioner's Response, filed on December 31, 2019 to which the Secretary interposed an objection on January 20, 2020 and in petitioner's April 7, 2022 to which the Secretary responded on April 18, 2022.  The Secretary has not offered any path by which Ms. Plotkin could have received compensation without first reopening the bankruptcy.  Overall, the Secretary's opposition regarding the necessity of the bankruptcy proceeding seems unsupported and dubious.  A better showing from the Department of Justice is expected.

Based upon the materials Ms. Toale presented, reopening the bankruptcy proceeding was necessary for Ms. Plotkin to receive compensation through the Vaccine Program.[4]  She could have the money only after a bankruptcy judge determined that the settlement was exempt from any creditors.  Thus, Ms. Toale as the executor of Ms. Plotkin's estate is entitled to a reasonable amount of compensation for work done in association with reopening the bankruptcy.

For the work associated with the bankruptcy reopening, Attorney Toale has requested approximately $20,000 in attorneys' fees, of which approximately $8,400 is work performed by Mr. Caldwell.  Attorney Toale has further requested $3,445.04 in costs of which the most significant item is the charge from the law firm in New Jersey ($2,341.50).  The Secretary did not interpose any specific objections to items sought in the bankruptcy reopening.

The work Mr. Caldwell performed in attempting to reopen the bankruptcy proceeding is not reasonable.  Once someone at Maglio, Christopher & Toale determined that reopening the bankruptcy was necessary, it was reasonable for an attorney to perform this work.  One starting point would have been the attorney

---

[4] Ms. Toale's belated realization that Ms. Plotkin should have disclosed a potential claim in her bankruptcy proceeding does not affect the outcome.  Ms. Plotkin's original bankruptcy case had closed before Ms. Plotkin retained Maglio, Christopher & Toale.  Thus, whenever Ms. Toale acted, the bankruptcy proceeding was going to be reopened.  Conceivably, a different analysis might occur if the bankruptcy action were open when a case in the Vaccine Program was started.

7

who represented Ms. Plotkin originally.  But, for an unknown reason, Maglio, Christopher & Toale chose not to use an attorney who was already familiar with the bankruptcy case.  Instead, someone selected Mr. Caldwell.  But, Mr. Caldwell does not seem knowledgeable about bankruptcy practice.

His apparent lack of knowledge contributed to a delay in Ms. Plotkin receiving compensation.  Mr. Caldwell worked on attempting to reopen the bankruptcy for approximately one year but seems not to have accomplished anything.  When he departed Maglio, Christopher & Toale, Attorney Toale retained a lawyer with knowledge of bankruptcy proceedings, who got the issues in bankruptcy resolved in approximately three months.  Furthermore, this attorney charged much less than Mr. Caldwell charged.  Accordingly, of the approximately $8,400 Mr. Caldwell charged, only $1,000 is accepted as reasonable.

Of the costs requested, the predominant share is for the New Jersey attorney.  His invoice explained his activities with more detail than the timesheets typically seen from attorneys representing petitioners in the Vaccine Program.  See Exhibit 41 at 8-9, 13-14.  No adjustment is made to the amount requested.

Maglio, Christopher & Toale requests reimbursement for costs this firm directly incurred, including mailings, Westlaw research, and Pacer downloads.  These are reasonable expenses and are adequately documented.

  2.  New Hampshire Probate Court

The second issue concerns Attorney Toale's work in creating an estate for Ms. Plotkin.  The sole purpose of this estate was to establish a vehicle by which Attorney Toale could receive attorneys' fees and costs.  Attorney Toale retained a lawyer in New Hampshire to assist with this process.

The Secretary's analysis of this issue is not a model of consistent advocacy.  Initially, the Secretary opposed an award of attorneys' fees and costs for this work.  See Resp't's Status Rep., filed Apr. 10, 2020, ¶ 4.  However, in his more recent filing, the Secretary posited the question "whether the probate proceedings here were a 'critical act' required for compensation."  Resp't's Resp., filed Apr. 18, 2022, at 4 (citations omitted).  The Secretary reached no conclusion as to whether the probate proceedings were a "critical act," even though the Secretary had maintained two years earlier that "an estate would be needed for Ms. Plotkin in order to facilitate payment of attorneys' fees."  Resp't's Status Rep., filed Apr. 10, 2020, at ¶ 2.

In any event, a finding that Attorney Toale was required to pursue the creation of an estate for her deceased former client can easily be made.  The Secretary essentially advocated for this conclusion in his April 10, 2020 status report.  The May 29, 2020 Order indicated that without a client, Attorney Toale could not be reimbursed for her work.  2020 WL 13543884, at *6-7 Thus, the work in New Hampshire probate was required only because of the Vaccine Program case.  Consequently, Ms. Toale as executor of Ms. Plotkin's estate is entitled to a reasonable amount of attorneys' fees and costs.

On the topic of the reasonable amount of attorneys' fees and costs, Ms. Toale has requested that Maglio, Christopher & Toale receive approximately $26,000 in attorneys' fees plus an additional $3,806.34 in costs.  The majority of the costs (approximately $2,500) is for the New Hampshire law firm.  The Secretary did not challenge any of these fees or costs as unreasonable.

The lack of objection from the Secretary weighs heavily in the assessment of the reasonableness of the amount of attorneys' fees and costs.  Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

A review of the invoices does not reveal anything objectionable.  Thus, Ms. Toale is awarded the amount requested.

Overall, the following amounts are awarded:

| | |
|---|---|
| Amount Requested in Attorneys' Fees | $59,483.70 |
| Reduction: Mr. Caldwell's inefficiency | $7,400.00 |
| Amount Awarded for Attorneys' Fees | **$52,083.70** |
| | |
| Amount Requested in Attorneys' Costs | $7,251.38 |
| Reduction: | $0.00 |
| Amount Awarded in Attorneys' Costs | **$7,251.38** |
| | |
| Total Amount of Attorneys' Fees and Costs | **$59,335.08** |

**Conclusion**

Ms. Toale, the executor of the estate of Ms. Plotkin, is entitled to an award of $59,335.08 in attorneys' fees and costs. A check in this amount shall be made payable to Ms. Toale, the executor of the estate of Ms. Plotkin, and Attorney Anne Toale, counsel of record for the petitioner.

The Clerk's Office is instructed to issue judgment in accord with this decision unless a motion for review is filed. The parties may file a joint notice not to seek review to expedite the issuance of judgment.

**IT IS SO ORDERED.**

s/Christian J. Moran  
Christian J. Moran  
Special Master